IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
(SOUTHERN DIVISION)

| | |
|---|---|
| BRADY HYDE,<br><br>               Plaintiff,<br><br>vs.<br><br>FRANKLIN AMERICAN MORTGAGE<br>COMPANY,<br><br>               Defendant. | Case No. 18-4113<br><br><br>**COMPLAINT** |

PLAINTIFF, BRADY HYDE, BY AND THROUGH COUNSEL, SHAWN NICHOLS, and for his Complaint against DEFENDANT, FRANKLIN AMERICAN MORTGAGE COMPANY, pleads as follows:

## JURISDICTION

1.    Jurisdiction of this court arises under 15 U.S.C. § 1681p.

2.    This is an action brought by a consumer for violation of the Fair Credit Reporting Act 15 U.S.C. § 1681, *et seq.* [hereinafter "FCRA"]), and pendent state court actions arising from the agreement between the parties.

## VENUE

3.    The transactions and occurrences which give rise to this action occurred in the City of Sioux Falls, Minnehaha County, South Dakota.

4.    Venue is proper in the District of South Dakota Southern Division.

## PARTIES

5.    Brady Hyde ("Hyde") is a resident of Sioux Falls, South Dakota in Minnehaha County.

6.      Franklin American Mortgage Company ("Franklin") is a Tennessee Company with a principal place of business in Franklin, Tennessee.

## GENERAL ALLEGATIONS

7.      On December 29, 2017, Hyde purchased three duplex buildings through financing with a local Sioux Falls, South Dakota, bank.  The local bank also retained servicing rights for all three loans.

8.      Hyde purchased the three apartment complexes for investment purposes, and throughout all times material, has not resided or otherwise physically maintained an office at any of the three properties.

9.      While the loans were held by the local Sioux Falls bank, all branch communication was made to Hyde at his home address.

10.     After making timely payments for two months, the local bank sold off the loan and servicing rights to Citizens Bank with servicing delegated to Franklin, its subsidiary.

11.     Upon Franklin taking over the servicing of the loan accounts, Hyde immediately worked through their on-line platform to set up Automated Clearing House ("ACH") payments for the loans.  Hyde received a confirmation email on March 12, 2018, from Franklin, assuring him that his monthly payment obligations would be automatically withdrawn from the designated checking account. *See* Exhibit A.

12.     Thereafter, Hyde deposited sufficient funds in the ACH checking account to cover several months of payments.  Over the next intervening months, Hyde believed that Franklin was withdrawing ACH payments each month to keep his loans in good standing consistent with the March 12, 2018 confirmation.

13.     Unbeknownst to Hyde, contrary to Franklin's confirmation email assuring that funds would be automatically withdrawn through ACH payment, Franklin did not withdraw funds via ACH as confirmed in email.

14.     Further, although all prior correspondence on the loan accounts had been sent to Hyde's personal address, Franklin sent notice of non-payment correspondence to the investment properties, even though Hyde does not reside or conduct business from these three properties and even though all communication with the original issuing lender was sent to Hyde's personal address.

15.     Hyde did not know or consent to his loans being sold to Franklin.  Franklin, knew or reasonably should have known that loan communication needed to be directed to the same address used by the issuing lender—i.e. Hyde's personal residence.

16.     On August 6, 2018, Franklin finally sent a notice of default in the amount of $7,478.89.  This was the first communication that Franklin made to Hyde's personal address even though that information was made available to them at the time they purchased the loan. Hyde would later learn that Franklin was aware that mail delivered to the investment properties had been returned, yet Franklin made no effort to change delivery preferences to match the delivery preferences used by the initial issuing bank.

17.     On August 7, 2018, Hyde was given notice on one of the loans that all the debt had been accelerated and that he now owed $274,652.64 to Citizens Bank, N.A.

18.     On August 7, 2018, Hyde was advised by debt collection law firm Halliday, Watkins & Mann, P.C., that Citizens Bank, N.A., was conducting a judicial foreclosure sale on the properties in question.

19.     Upon notification that the loans were past due, Hyde immediately made payment on two of the three loans.  On the third loan, Franklin refused to accept payment because the loan had been sent out to external counsel for foreclosure.  Hyde has requested payment amount from Franklin to bring the third loan current, but Franklin has not provided this information as of yet.

20.     Thereafter, Hyde tendered payment to Franklin for the principal and interest that had accrued since March 12. Franklin rejected the tender, even though the initial default was caused by Franklin's own errors.  *See* attached Exhibit B.

21.     Despite its own clerical error in not withdrawing payment via ACH as established and confirmed, and sending notifications to the wrong address, Franklin has reported derogatory information on Hyde's credit report which decreased his credit score by approximately two hundred points.

22.     Prior to Franklin's error, Hyde had excellent credit.

23.     Franklin has been made aware that the derogatory reporting is a result of its own errors, but Franklin continues to inaccurately report derogatory information on Hyde's credit report.

24.     Franklin should remove any default.

25.     Franklin should remove all derogatory information.

## COUNT I

### NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT BY FRANKLIN AMERICAN MORTGAGE COMPANY

26.     Plaintiff realleges the above paragraphs as if recited verbatim.

27.     By federal law, Franklin is required to follow appropriate rules and procedures to make sure that the information it reports to the credit bureaus is true and accurate.  *See* 15 U.S.C. § 1681(e).

28.     Franklin's underlying policies and procedures which resulted in erroneously informing its customer that payments were being automatically withdrawn from his checking account, and thereafter sending default notices to the wrong address, confirm that Franklin's underlying account management policies and procedures are flawed, inadequate and otherwise have fostered improper derogatory reporting.

29.     As a direct and proximate cause of Franklin's negligent failure to perform its duties under the FCRA, Hyde has suffered damages, loss of access to credit, inability to finance commercial loans which Hyde guarantees as part of his profession, mental anguish, suffering, humiliation, and embarrassment.

30.     The Fair Credit Reporting Act similarly requires under corresponding regulation that each furnisher, such as Franklin, have reasonable written policies and procedures regarding the accuracy and integrity of the information it reports.  *See* 12 CFR 222.42.

31.     These written policies and procedures must be appropriate to the nature, size, complexity and scope of the furnisher's activities.

32.     Franklin, as a national loan servicer, should not have systemic flaws in its ACH approval and loan communication procedures, which likely lead to inaccurate derogatory information being reported by its customers.

33.     Franklin is liable to Hyde by reason of its violations of the FCRA is an amount to be determined by the trier of fact together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

34.     Hyde has a private right of action to assert claims against Franklin arising under 15 U.S.C. § 1681s-2.

5

WHEREFORE, PLAINTIFF, BRADY HYDE, PRAYS that this Court grants him judgment against DEFENDANT, FRANKLIN AMERICAN MORTGAGE COMPANY, for damages, costs, interest, and attorneys' fees.

## COUNT II

### NEGLIGENT VIOLATIONS OF THE FAIR CREDIT REPORTING ACT BY FRANKLIN AMERICAN MORTGAGE COMPANY

35.    Plaintiff realleges the above paragraphs as if recited verbatim.

36.    After being informed that Hyde disputed the accuracy of the information it was providing, Franklin negligently failed to direct its collection arm to stop reporting the default and other derogatory information on Hyde's credit score.

37.    Franklin negligently failed to review all relevant information available to it and provided by Hyde as required by 15 U.S.C. § 1681s-2.

38.    As a direct and proximate cause of Franklin's negligent failure to perform its duties under the FCRA, Hyde has suffered damages, loss of access to credit, inability to finance commercial loans which Hyde guarantees as part of his profession, mental anguish, suffering, humiliation, and embarrassment.

39.    Franklin is liable to Hyde for either statutory damages or actual damages he has sustained by reason of its violations of the FCRA in an amount to be determined by the trier of fact, together with an award of punitive damages in the amount to be determined by the trier of fact, as well as for reasonable attorneys' fees and he may recover therefore pursuant to 15 U.S.C. § 1681n.

WHEREFORE, PLAINTIFF, BRADY HYDE, PRAYS that this Court grants him judgment against DEFENDANT, FRANKLIN AMERICAN MORTGAGE COMPANY, for damages, costs, interest, and attorneys' fees.

## COUNT III

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

40. Plaintiff re-alleges the above paragraphs as if recited verbatim.

41. The Defendant is required under South Dakota law to perform the contract which it accepted assignment of by purchasing the loan, in good faith and with fair dealing.

42. By administering loan servicing for these three loan accounts in a poor manner and inconsistent with adequate policies and procedures for an institution Franklin's size, Franklin has violated South Dakota common law with respect to contractual good faith and fair dealing.

43. Hyde has been damaged and sustained detriment as a direct result of the Defendant's violation of the covenant of good faith and fair dealing.

44. As a direct and proximate cause of Franklin's negligent failure to perform its duties under the FCRA, Hyde has suffered damages, loss of access to credit, inability to finance commercial loans which Hyde guarantees as part of his profession, mental anguish, suffering, humiliation, and embarrassment.

45. Franklin is liable to Hyde by reason of its violation of the covenant of good faith and fair dealing.

WHEREFORE, PLAINTIFF, BRADY HYDE, PRAYS that this Court grants him judgment against DEFENDANT, FRANKLIN AMERICAN MORTGAGE COMPANY, for damages, costs, punitive damages, interest and attorneys' fees.

## COUNT IV

### DECEPTIVE TRADE PRACTICES

46. Plaintiff re-alleges the above paragraphs as if recited verbatim.

47.     By its mishandling and mismanagement of Hyde's loan accounts, commencing pre-foreclosure legal action against him, and refusing tender of principal and interest payment despite causing these circumstances through its own mismanagement, Franklin has engaged in violation of South Dakota law with respect to deceptive trade practices.  As a direct and proximate cause of Franklin's violation of South Dakota's unfair and deceptive trade practices laws, Hyde has suffered damages, loss of access to credit, inability to finance commercial loans which Hyde guarantees as part of his profession, mental anguish, suffering, humiliation, and embarrassment.

48.     Franklin is liable to Hyde by reasons of its violation of South Dakota's unfair and deceptive trade practices laws in an amount to be determined by a trier of facts together with all other related damages available at law.

WHEREFORE, PLAINTIFF, BRADY HYDE, PRAYS that this Court grants him judgment against DEFENDANT, FRANKLIN AMERICAN MORTGAGE COMPANY, for damages, costs, punitive damages, interest and attorneys' fees.

Dated at Sioux Falls, South Dakota, this 13ᵗ day of ___September___, 2018.

CADWELL SANFORD DEIBERT & GARRY LLP

By_____
        Shawn Nichols
        200 East 10ᵗʰ St., Suite 200
        Sioux Falls SD 57104
        (605) 336-0828
        snichols@cadlaw.com
        Attorneys for Plaintiff

8