UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BRADY HYDE,<br><br>    Plaintiff,<br><br> vs.<br><br>FRANKLIN AMERICAN MORTGAGE COMPANY,<br><br>    Defendant. | 4:18-CV-04113-KES<br><br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Brady Hyde, filed a complaint alleging that defendant, Franklin American Mortgage Company, violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681. Docket 1. The complaint also included pendent state-law claims for breach of covenant of good faith and fair dealing and deceptive trade practices. *Id.* Hyde alleges that Franklin, as a furnisher of information to credit reporting agencies, negligently violated the FCRA resulting in default, foreclosure proceedings, and credit score damage. *Id.* ¶¶ 26-48. Franklin moves for summary judgment. Docket 21. Hyde opposes the motion. Docket 23. For the following reasons, the court grants Franklin's motion for summary judgment.

## FACTUAL BACKGROUND

The facts, viewed in the light most favorable to the non-moving party, are as follows:

Hyde is a residential contractor and land developer in Sioux Falls, South

Dakota. Docket 1 ¶ 5; Docket 24 ¶ 12.[1] In 2017, Hyde purchased apartment complexes through loan financing with Plains Commerce Bank. Docket 1 ¶ 7; Docket 21 ¶ 3; Docket 24 ¶ 3. Hyde intended to purchase the units for investment purposes and rent them to tenants. Docket 1 ¶ 8. During the time Plains Commerce Bank was the mortgage servicer, Hyde did not live at the rental properties and all bank communication was made to Hyde at his personal address. *Id.* ¶ 9.

On August 14, 2018, Hyde's three loans were assigned to Franklin. Docket 21 ¶ 4; Docket 24 ¶ 4. Upon notice that Hyde's mortgage had been assigned, Hyde enrolled in Franklin's Automatic Clearing House (ACH) payments through Franklin's website. Docket 1 ¶ 11. Hyde received an email from Franklin that he had successfully enrolled in ACH payments. *Id.*; Docket 25-1. Hyde then deposited funds in the ACH checking account, believing that Franklin would automatically withdraw the monthly mortgage payments from the account each month. Docket 1 ¶ 12. Instead, Hyde alleges that funds were not automatically withdrawn through the ACH account and his loans defaulted. *Id.* ¶¶ 13, 16-18. Internal Franklin documents state that the following day, a letter was mailed to Hyde advising that Hyde's ACH account was not set up because the "name on account [did] not match so ACH is

---

[1] Hyde provided a section entitled "Plaintiff's Additional Statements of Undisputed Material Facts" within "Plaintiffs Reponses to Statement of Undisputed Material Facts." *See* Docket 24 at 3. Franklin has not responded to these facts. Thus, the court is not aware if these additional facts are disputed or undisputed. The court includes them as factual background when needed.

rejected." Docket 25-5 at 3. Hyde alleges that although all previous correspondence with Plains Commerce Bank was sent to his personal address, Franklin sent correspondence to the mortgaged properties' addresses even though Hyde did not live there. Docket 1 ¶ 14. Because of this, Hyde was unaware that his ACH payments had not processed and that his loans were in default. *Id.* ¶ 16.

At the time Hyde closed on his mortgage with Plains Commerce Bank, a multi-family rider was executed amending Section 6 of the mortgage (Docket 21-1 at 6) that required Hyde as the borrower to live at the mortgaged properties. Docket 24 at 3; Docket 25-7 at 3. Section 7 of Hyde's mortgage note states: "[A]ny notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder notice of my different address." Docket 21 ¶ 5; Docket 21-2 at 3. Hyde's "Property Address" was designated in the note as "509 W. Laquinta St & 508 W. Cascade St., Sioux Falls, SD 57108." Docket 21 ¶ 6; Docket 21-1 at 3. This "property address" was not Hyde's personal home address, but instead the address of the rental properties. Thus, Franklin was sending its loan-related communications to the address of Hyde's rental properties and not his personal address. Docket 1 ¶ 14.

Hyde disputes this paragraph of the note, arguing that "[a]t the time of closing, a multi-family rider was signed deleting any provision that the noteholder live at the property address." Docket 24 ¶ 5. At a deposition on

September 13, 2019, Hyde responded to questions about which address loan

notices would be sent:

> Q: . . . So if we have the starting point of the note that you're to receive notice at the 508 and 509 [rental property address], unless you provide notice to the lender of a different address, when did you provide notice to the lender, either if it was the original lender Plains Commerce Bank or Franklin, of a different mailing address?
>
> . . .
>
> A: Plains Commerce originated the note. In my application they had noted the -- my home address and that these were not owner-occupied properties. Plains Commerce -- I think they serviced this for two or three months. Their invoicing or their statements and communication was delivered to my 9301 West 32nd Street address, from my recollection. It's been a while, but I'm pretty confident of that. And then -- so with that, I had -- I guess I just understood that being that Plains Commerce originated them and was using my home address, that they were aware that my home address was accurate and that these were investment properties.
>
> Q: And that you said -- and they got that home address based off your origination application for these three loans; correct?
>
> A: Yep.
>
> . . .
>
> Q: You never sent to Plains Commerce Bank after you originated the loans a notice saying, [p]lease forward all communications to my 9301 address?
>
> A: No, they were currently -- they were currently sending everything there.
>
> Q: All right. And then did you ever give notice to Franklin -- I mean, I guess the same question: Did you ever give notice to Franklin before you became aware of the addressing problem in August of 2018 to send notice to an updates -- to the 9301 address?
>
> . . .
>
> A: No.

Docket 21 ¶ 12; Docket 24 ¶ 12; Docket 21-4 at 15-17.

Hyde contacted Franklin by letter on August 1, 2018, for the first time, requesting that Franklin change the mailing address for notices to his personal address. Docket 21 ¶ 13; Docket 24 ¶ 13; Docket 21-5 at 2-3. On August 6, 2018, after Hyde's mailing address had been changed, Franklin sent a notice of default to Hyde's personal address. Docket 1 ¶ 16. Once Hyde learned that his loans were past due, Hyde made payment on two of the three loans. *Id.* ¶ 19. Hyde alleges that Franklin erred by not withdrawing payment from Hyde's ACH account and by sending notices to the wrong address. *Id.* ¶ 21. Because of these errors, Hyde alleges that Franklin "has reported derogatory information on Hyde's credit report which decreased his credit score," and that prior to Franklin's negligence, Hyde had excellent credit. *Id.* ¶¶ 21-22.

Although Franklin "has been made aware that the derogatory reporting [was] a result of Franklin's own errors," Hyde alleges that Franklin "continues to inaccurately report derogatory information on Hyde's credit report." *Id.* ¶ 23. Hyde is familiar with credit reporting agencies (CRAs) including agencies like "TransUnion, Equifax, and Experian," but did not file a complaint with any CRA about the alleged incorrect or "derogatory information" furnished by Franklin. Docket 21 ¶¶ 9, 14; Docket 21-4 at 20-21.[2] Hyde did not allege in

---

[2] Under Local Rule 56.1, "[a] party opposing a motion for summary judgment must respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record. A party opposing a motion for summary judgment must identify any material facts on which there exists a genuine material issue to be tried." D.S.D. LR 56.1. Hyde did not respond to Docket 21 ¶ 14 of Franklin's statement of facts that states, "During his deposition, [Hyde] also stated that

the complaint that he filed a report with a CRA about the incorrect or "derogatory" information furnished by Franklin or that Franklin was provided notice by a CRA of Hyde's disputes. Docket 21 ¶ 9; Docket 24 ¶ 9; *see also* Docket 1.

## LEGAL STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must inform the court of the basis for its motion and also identify the portions of the record that show there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le*

---

he is familiar with 'credit reporting agenc[ies]' including the 'big three' . . . and that he has never contacted any such agency as to [Franklin's] handling of [Hyde's] loans." Docket 21 ¶ 14. Thus, the court assumes as true Franklin's assertion that Hyde has never contacted a credit reporting agency as to Franklin's handling of Hyde's loans.

*Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment is precluded if there is a genuine dispute of fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the court views the facts and the inferences drawn from such facts " 'in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248 (citing 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2725 at 93-95 (3d ed. 1983). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48.

## DISCUSSION

### I.     Count I and II: Negligent Violation of the FCRA

Franklin moves for summary judgment on counts I and II of Hyde's complaint, which invoke various provisions of the FRCA. Docket 21 at 8-14. Hyde brings his claims under several federal statutes and regulations (15 U.S.C. § 1681e, 12 C.F.R. § 222.42, 15 U.S.C. § 1681o, and 15 U.S.C. § 1681s-2) that impose certain duties on individuals or entities—like Franklin—who furnish information to credit reporting agencies. Docket 1 ¶¶ 27, 30, 33-34, 37-39. Franklin argues that Hyde's FCRA claims fail as a matter of law because

the federal statutory and regulatory provisions invoked by Hyde cannot be applied to Franklin as a "furnisher" of information under the FCRA. Docket 21 at 8-14. Hyde disagrees, arguing that the statutes and regulations do apply to Franklin because Franklin was put on adequate notice of Hyde's credit reporting disputes to satisfy the statutory provisions. Docket 23 at 5-6.

### A.    Hyde's claims under 15 U.S.C. § 1681s-2

Hyde's FCRA claims center around 15 U.S.C. § 1681s-2. Hyde alleges that he has a private right of action under 15 U.S.C. § 1681s-2 because Franklin negligently failed to review all relevant information as required under the statute. Docket 1 ¶¶ 34, 37. Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). In addition to various requirements imposed on CRAs, the FCRA also imposes duties on "furnishers" of information to CRAs. *See* 15 U.S.C. § 1681s-2 (entitled "[r]esponsibilities of furnishers of information to [CRAs]"). "The most common . . . furnishers of information are credit card issuers . . . lenders, utilities, insurers, collection agencies, and government agencies." H.R. Rep. No. 108-263, pt. 1, at 24 (2003). Specifically, 15 U.S.C. § 1681s-2(b) provides the "[d]uties of furnishers of information upon notice of dispute" and states in part:

> After receiving notice pursuant to section 1681i(a)(2) . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
> > (A) conduct an investigation with respect to the disputed information;
> > (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2);

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

    (i)   modify that item of information;

    (ii)  delete that item of information; or

    (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).

If a consumer disputes the accuracy of information in a credit report, the FCRA provides a private right of action for willful or negligent noncompliance against the "furnisher" of the information. *See* 15 U.S.C. §§ 1681n-1681o. But 15 U.S.C. § 1681s-2 limits this private right of action to claims arising under subsection (b). *See* 18 U.S.C. § 1681s-2(c) (noting "[e]xcept [for circumstances not relevant here], sections 1681n and 1681o of this title do not apply to any violation of . . . subsection (a) of this section, including any regulations issued thereunder[.]"). Thus, duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies. *See* 15 U.S.C. §§ 1681s(c)(1)(B), 1681s-2(c)-(d) (granting enforcement power to state and federal regulators); *see also Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002) (explaining that "Congress limited the enforcement of the duties imposed by § 1681s-2(a) to governmental bodies."). Here, Hyde alleges that he "has a

private right of action to assert claims against Franklin arising under 15 U.S.C. § 1681s-2" and that "Franklin negligently failed to review all relevant information available to it . . . as required by 15 U.S.C. § 1681s-2." Docket 1 ¶¶ 34, 37. Because enforcement of the duties imposed by § 1681s-2(a) is limited to governmental bodies, the court will construe Hyde's claim as a private right of action under 15 U.S.C. § 1681s-2(b).

To trigger a furnisher's duties under 15 U.S.C. § 1681s-2(b), a furnisher must be notified about the consumer dispute. *Id.* The parties disagree on what that notice must look like to prevail on an FCRA claim. Franklin argues that Hyde's FCRA claims fail as a matter of law because under the statute a furnisher must receive notice of the dispute from a CRA and not from the consumer himself. Docket 21 at 11-14. Franklin argues that Hyde failed to provide evidence that a CRA notified Franklin, as a furnisher, about the consumer's dispute, and thus his claim fails. *Id.* Hyde disagrees, arguing that Franklin was properly put on notice because Hyde's credit report showed that the furnished information was disputed. Docket 23 at 5-6.

While the Eighth Circuit has not addressed whether there is a private cause of action under the FCRA, most district courts have concluded such a right exists. *See Hurocy v. Direct Merchs. Credit Card Bank, N.A.*, 371 F. Supp. 2d 1058, 1060 (E.D. Mo. 2005) (listing district courts that have found § 1681s-2(b) provides a claim against a furnisher of information). For example, the District of Minnesota has held that "[c]ritically, the duties imposed by § 1681s-2(b) on a furnisher of information are triggered only when the furnisher

10

receiv[es] notice pursuant to [§] 1681i(a)(2)." *Anderson v. Experian Info. Sols., Inc.*, 2009 WL 3644923, at *3 (D. Minn. Nov. 2, 2009) (internal quotation omitted). The court held, and the plaintiff conceded, that "[n]otice received pursuant to § 1681i(a)(2) is notice received from a *consumer-reporting agency*, not notice received from a *consumer*." *Id.* (emphasis in original). Although the case was appealed and affirmed on other grounds, the Eighth Circuit Court of Appeals noted in dicta that "[a]s the district court recognized, the duties of EMC as a furnisher of credit information under 15 U.S.C. § 1681s-2(b) are triggered by notice that its information is being disputed *from a CRA*, not from the consumer." *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905, 907 (8th Cir. 2011) (emphasis added) (internal citation omitted). Because the plaintiff's "[c]omplaint alleging that EMC reported inaccurate data failed to allege a triggering CRA notice, [the complaint] failed to state a claim against EMC under the FCRA." *Id.*

Other circuits have found that a private action under the FCRA does not exist against the furnisher of information unless the consumer first files a dispute with the CRA. For example, the Third Circuit Court of Appeals held:

> Although consumer reporting agencies are subject to immediate suit by consumers under §§ 1681n and 1681o, *furnishers of the information are not*. Instead, a private citizen wishing to bring an action against a furnisher must first file a dispute *with the consumer reporting agency*, which then must notify the furnisher of information that a dispute exists. *Only after this notification* can the furnisher face any liability to a private individual. To allow a consumer to bypass this structural framework . . . would interfere with this congressionally chosen path for creating liability.

*SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011) (emphasis added). The Fifth Circuit Court of Appeals has also held that notice from a CRA to the furnisher of information "is necessary to trigger the furnisher's duties under [§] 1681s-2(b)." *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002). "If a CRA notifies a furnisher . . . that a consumer disputes the reported information, the furnisher must 'review all relevant information provided by the [CRA],' 'conduct an investigation,' 'report the results of the investigation,' and 'modify . . . delete. . . or . . . permanently block the reporting of [inaccurate or incomplete] information.' " *Jett v. Am. Home Mortg. Servicing, Inc.*, 614 F. App'x 711, 713 (5th Cir. 2015) (quoting 15 U.S.C. § 1681s-2(b)(1)(A)–(E)). For "when a [CRA] receives a dispute from a consumer, it sends an ACDV form to the furnisher of the credit information. The form contains the information that is being reported, what the consumer disputes, and blank fields for the furnisher to edit and return." *Id.* at 712 n.1. And the Ninth Circuit Court of Appeals has held that "Congress did provide a filtering mechanism in § 1681s-2(b) by making the disputatious consumer notify a CRA and setting up the CRA to receive notice of the investigation by the furnisher," such that only a nonresponsive furnisher to the CRA may be privately sued by the consumer. *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002).

Finally, because 15 U.S.C. § 1681s-2(b) contemplates the duty of a furnisher of information to act in response to a notice of a dispute from a CRA, "courts have uniformly concluded that § 2(b) provides a private cause of action

only if the furnisher received notice from a [CRA], *as opposed to the plaintiff alone*, that the credit information was disputed." *Gibbs v SLM Corp.*, 336 F. Supp. 2d 1, 11 (D. Mass. Sept. 9, 2004) (internal quotation omitted); *see, e.g.*, *Abbett v. Bank of Am.*, 2006 WL 581193, at *5 (M.D. Ala. Mar. 8, 2006) (finding "[t]o prevail on a § 1681s-2(b) claim, [the plaintiff] must show that a CRA notified the furnisher of information about the consumer's dispute pursuant to § 1681i(a)(2)."); *Ransom v. Equifax, Inc.,* 2010 WL 1258084, at *4 n.2 (S.D. Fla. Mar. 30, 2010) (noting that "[t]o the extent [a private right of action under the FCRA against a furnisher] exists, the furnisher's duty . . . is a duty to reinvestigate credit information when notice is received from a CRA, not directly from a consumer."); *Harwood v. Disney*, 2016 WL 1696446, at *3 (D. Md. Apr. 28, 2016) (holding that "a private cause of action arises under § 1681s-2(b) only when the debtor files a dispute with the credit reporting agency and the furnisher of the information in turn receives notice from the credit reporting agency that the consumer has filed a dispute."); *Ausar-El v. Barclay Bank Del.*, 2012 WL 3137151, at *3 (D. Md. July 31, 2012) (concluding that in order "to bring a claim under § 1681s-2(b), a plaintiff must establish three elements: (1) that he or she notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information."); *Jones v. Alltel Ohio Ltd.*, 2007 WL 1731321, at *4-5 (N.D. Ohio June 14, 2007) (finding that the

plaintiff's "failure to allege that she notified a [CRA] that in turn gave notice to Alltel is an omission that would be fatal to her claim.").

Here, Hyde has not demonstrated that he filed a dispute with a CRA or that Franklin received notice of the dispute from that CRA. *See* Fed. R. Civ. P. 56(c). Hyde has failed to produce any documentation that he submitted a complaint to a CRA to trigger Franklin's duties under the FCRA. *Id.* Hyde provided a November 26, 2018 credit score report, but the report does not show the loan in dispute. *See* Docket 25-6 at 8-9. Instead, the report offers Hyde the option to "[d]ispute this account." *Id.* at 9. Hyde has provided no documentation that he then disputed the information by notifying the CRA.

Hyde also provided a September 6, 2019 credit report. *Id.* at 11-14. But that report notes "[a]ccount previously in dispute—now resolved, reported by *data furnisher.*" *Id.* at 13 (emphasis added). This report also fails to show that Hyde himself filed a notice of dispute with the reporting agency. Rather, the report states that Franklin, as the data furnisher, reported to the CRA the dispute and resolution. These reports, and all other documentation provided by Hyde, fail to show the necessary statutory requirements: (1) that Hyde submitted a complaint to a CRA, (2) that the CRA then notified Franklin about the dispute, and (3) that Franklin then failed to conduct or investigate and report back to the CRA as to its position on the disputed information.

Apart from Hyde's lack of evidence, Franklin provided Hyde's deposition testimony in which Hyde acknowledged that he never contacted a CRA about Franklin's handling of his loans. *See* Docket 21-4 at 20-21. Hyde also provided

internal documents that do not mention being contacted by a CRA and instead only mention receiving notification from Hyde himself and receiving a complaint from a government agency—the Consumer Financial Protection Bureau (CFPB). *See* Docket 25-5 at 3-4. And although Hyde argues that Franklin has a "monopoly on the communications by and between the credit bureaus which would confirm or deny the existence of a dispute," Hyde could have produced documentation of a dispute he submitted to the CRA or he could have subpoenaed the CRA for documentation vital to his 15 U.S.C. § 1681s-2(b) claim. Docket 23 at 6. Hyde did not do so. Hyde fails to provide evidence, or even allege, that notice by a CRA was provided to Franklin to trigger duties under the FCRA.

To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley*, 415 F.3d at 910 (quoting *Krenik*, 47 F.3d at 957). Hyde has failed to demonstrate that he followed the statutory requirements of the FCRA and that he submitted a dispute to a CRA prior to bringing this private action. Thus, Hyde's claim under 15 U.S.C. § 1681s-2(b) fails. Summary judgment is granted in favor of Franklin on Hyde's 15 U.S.C. § 1681s-2(b) claim.

**B.**  **Hyde's claims under 15 U.S.C. §§ 1681e, 1681n-1681o, and 12 C.F.R. § 222.42**

In addition to Hyde's claim under 15 U.S.C. § 1681s-2(b), Hyde alleges Franklin violated a variety of other subsections of the FCRA. Hyde alleges Franklin violated 15 U.S.C. § 1681(e) because "[b]y federal law, Franklin is

required to follow appropriate rules and procedures to make sure that the information it reports to the credit bureaus is true and accurate." Docket 1 ¶ 27 (citing 15 U.S.C. § 1681(e)). Hyde also alleges in both counts of his complaint that Franklin is liable under 15 U.S.C. §§ 1681n and 1681o. *Id.* ¶¶ 33, 39. Finally, Hyde alleges Franklin negligently failed to perform its duties under the FCRA because 12 C.F.R. § 222.42 requires that furnishers have reasonable written policies and procedures as to the accuracy of the information it reports and Franklin—as a furnisher—should not have "systemic flaws" in its loan communication procedures. *Id.* ¶¶ 30-32. Franklin argues that these statutes and regulations do not provide Hyde a private right of action under the FCRA and fail as a matter of law. Docket 21 at 8-10. In his opposition to summary judgment, Hyde does not address these statutes and does not dispute Franklin's position that the statutes do not provide a private right of action against Franklin. *See* Docket 23 at 5-6.

First, 15 U.S.C. § 1681e concerns compliance procedures that pertain to regulations governing CRAs. The statute imposes no duty or obligation on "furnishers" like Franklin. *See* 15 U.S.C. § 1681e. Also, Hyde has failed to introduce any evidence or provide argument that Franklin violated 15 U.S.C. § 1681e or that the subsection applies to Franklin. *See* Fed. R. Civ. P. 56(c), (e). Thus, because the statute imposes no duty or obligation on Franklin, and Hyde has failed to introduce evidence or any genuine dispute of material fact on the issue, the statute cannot be the basis for Hyde's claim against Franklin.

Second, the FCRA allows an aggrieved consumer to recover both actual damages and attorney's fees for violations of 15 U.S.C. § 1681s-2(b) under 15 U.S.C. §§ 1681n-1681o(a). *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009). "If a violation [of the FCRA] is negligent, the affected consumer is entitled to actual damages. If willful, however, the consumer may have actual damages, or statutory damages ranging from $100 to $1,000, and even punitive damages." *Safeco Ins. Co. of Am.*, 551 U.S. at 53 (citing 15 U.S.C. §§ 1681o, 1681n). As stated above, Hyde's claim fails under 15 U.S.C. § 1681s-2(b) because Hyde has failed to provide evidence that he first notified a CRA that in turn notified Franklin. Because Hyde does not have a claim under 15 U.S.C. § 1681s-2(b), 15 U.S.C. §§ 1681o and 1681n cannot be the basis for Hyde's claim against Franklin.

Finally, the FCRA requires under corresponding regulation that furnishers of information have certain policies and procedures. *See* 12 C.F.R. § 222.42. The regulation requires furnishers to "establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a [CRA]." *Id.* It is not clear, however, if a furnisher's failure to comply with 12 C.F.R. § 1022.42 creates a private right of action separate from the FCRA. *See Humphrey v. Trans Union LLC*, 2017 WL 1379405, at *4 (W.D. Wis. Apr. 17, 2017) (concluding that the plaintiff failed to demonstrate "how this claim under the regulation [12 C.F.R. § 1022.42] is actionable."). 15 U.S.C. § 16681s-2 recognizes that there is a private right of action for willful or negligent violation

of the FCRA by furnishers, but does not mention violations of regulations. *See* 15 U.S.C. § 1681s-2(c), (d) (providing a private cause of action under 15 U.S.C. § 1681s-2(b) based on willful or negligent conduct permitted under 15 U.S.C. §§ 1681n-1681o).

Here, Hyde has not provided evidence that Congress intended to create a private right of action for furnishers who violate 12 C.F.R. § 1022.42(a). Hyde has also failed to provide evidence or argument that Hyde failed to "establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information" that Franklin reports. 12 C.F.R. § 1022.42(a); *see also* Fed. R. Civ. P. 56(c), (e). And as discussed by the Fifth Circuit Court of Appeals in *Jett*, the policies and procedures of a furnisher are triggered only when a furnisher has a duty to investigate the dispute reported to them by a CRA. 614 F. App'x at 714. As discussed above, Hyde failed to provide evidence that a CRA notified Franklin of a dispute, triggering Franklin's duties to investigate the reported dispute with reasonable policies and procedures. Thus, the regulation and Franklin's policies and procedures cannot be a basis for Hyde's claim.

Hyde has failed to provide argument or demonstrate the existence of specific facts in the record that create a genuine issue for trial. *See Krenik*, 47 F.3d at 957. Thus, Franklin's motion for summary judgment on all of Hyde's FCRA claims is granted.

## II.     South Dakota State-Law Claims

In counts III and IV of his complaint, Hyde alleges pendent state-law claims that Franklin breached the covenant of good faith and fair dealing and engaged in deceptive trade practices. Docket 1 ¶¶ 2, 40-48. Franklin argues that Hyde's pendent state-law claims should be dismissed. Docket 21 at 14-16.

### A.     South Dakota Covenant of Good Faith and Fair Dealing

Hyde alleges in count III of his complaint that Franklin breached the covenant of good faith and fair dealing. Docket 1 ¶¶ 40-45. Hyde alleges that "[b]y administering loan servicing for these three loan accounts in a poor manner and inconsistent with adequate policies and procedures for an institution Franklin's size" Franklin violated South Dakota's "covenant of good faith and fair dealing." *Id.* ¶¶ 42-43.

South Dakota law imposes upon every contract an implied covenant of good faith and fair dealing. *See Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 841 (S.D. 1990). "This covenant affords only contract remedies; there is no independent tort for its breach." *Taylor Equip., Inc. v. John Deere Co.*, 98 F.3d 1028, 1031 (8th Cir. 1996) (applying South Dakota law). "Consequently, an independent legal duty must extend beyond a contract's implied covenant of good faith and fair dealing." *Schipporeit v. Khan*, 775 N.W.2d 503, 505 (S.D. 2009). "Contract claims raise questions of interpretation, and therefore, absent any factual disputes, they remain legal questions." *Farm Credit Servs. of Am. v. Dougan*, 704 N.W.2d 24, 27 (S.D. 2005) (citation omitted).

The duty of good faith permits a party to bring an action for breach of the implied covenant when the other party "by [its] lack of good faith, limited or completely prevented the aggrieved party from receiving the expected benefits of the bargain." *Garrett*, 459 N.W.2d at 841. "Good faith" is defined as " 'honesty in fact in the conduct or transaction concerned.' " *Id.* (quoting SDCL § 57A-1-20(19)). Lack of good faith may be evidenced by conduct like "evasion of the spirit of the deal; abuse of power to determine compliance; and, interference with or failure to cooperate in the other party's performance." *Id.* at 845. Good faith "excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." Restatement (Second) of Contracts § 205 cmt. a (1981). "The meaning of the covenant varies with the context of the contract. Ultimately, the duty 'emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.' " *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184, 194 (S.D. 2007) (quoting *Garrett*, 459 N.W.2d at 841).

"The covenant of good faith does not create an amorphous companion contract with latent provisions to stand at odds with or in modification of the express language of the parties' agreement." *Dougan*, 704 N.W.2d at 28. And "[t]he implied covenant may not be used to rewrite a contract[.]" *Sioux Falls Kenworth, Inc. v. Isuzu Commercial Truck of Am., Inc.*, 4:14-CV-04187-RAL, 2017 WL 3600404, at *21 (D.S.D. Aug. 18, 2017). Thus, the South Dakota Supreme Court has held that "[i]f the express language of a contract addresses

an issue, then there is no need to construe intent or supply implied terms under the implied covenant." *Nygaard*, 731 N.W.2d at 194 (internal quotation omitted).

Here, the express language of the contract addresses mailings and notices. Section 7 of Hyde's mortgage note states: "[A]ny notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address." Docket 21-2 at 3. Hyde's "Property Address" referred to in the note was denoted as "509 W. Laquinta St & 508 W. Cascade St, Sioux Falls, SD 57108." *Id.* at 5; Docket 21 ¶ 6. Hyde disputes this paragraph of the note, arguing that the mortgage rider deleted "Section 6 of the mortgage" in its entirety. Docket 23 at 6.

Hyde is correct that the multi-family mortgage rider deleted Section 6 of the mortgage. The mortgage rider says, "Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupation of the Property is deleted." Docket 25-7 at 3. The multi-family mortgage rider did not, however, delete Section 7 of the note entitled "Giving of Notices." *See id.*; Docket 21-2 at 3. Hyde has provided no evidence that Section 7 of the note was deleted by the multi-family mortgage rider, or that Hyde supplied Franklin, as the note holder, notice of a different address until Hyde contacted Franklin by letter on August 1, 2018, for the first time, requesting that Franklin change the mailing address for notices to his personal address. *See* Docket 21-5 at 2-3. Instead, the specific provisions of the note that govern where notices and

communications were to be sent was not amended, and Hyde has presented no evidence that Plains Commerce Bank should have been sending notices to his personal address because of notice of an address change.

Instead, Hyde's deposition shows that Hyde never contacted Franklin to supply a different address as required by Section 7 of the note until August 1, 2018. *See* Docket 21 ¶ 12; Docket 24 ¶ 12; Docket 21-4 at 15-16. Thus, the express language of the contract addresses where notices are to be sent and how addresses for notices are to be changed. Hyde has provided no evidence that the provision governing notice was amended. And "if the express language of a contract addresses an issue, then there is no need to construe intent or supply implied terms under the implied covenant." *Nygaard*, 731 N.W.2d at 194 (internal quotation omitted). For "[w]hen the express provisions of the loan documents [provide duties and rights,] there can be no breach of the implied covenant." *Dougan*, 704 N.W.2d at 28.

Even if the express language of the contract did not address the issue, Hyde has failed to provide evidence that Franklin's actions were not " 'honest[] in fact in the conduct or transaction concerned.' " *See Garrett*, 459 N.W.2d at 841 (quoting SDCL § 57A-1-201(19)). Hyde has not provided evidence that Franklin's conduct was "evas[ive] of the spirit of the deal; abus[ive] of power to determine compliance; [or], interfer[ing] with or fail[ing] to cooperate in the other party's performance." *Id.* at 845. Hyde has provided no evidence that Franklin did not faithfully attempt to work toward the "common purpose" of the parties' contract. *Id.* at 841.

Finally, Hyde alleges in count III that "[a]s a direct and proximate cause of Franklin's negligent failure to perform its duties under the FCRA, Hyde has suffered damages, loss of access to credit, inability to finance commercial loans which Hyde guarantees as part of his profession, mental anguish, suffering, humiliation, and embarrassment." Docket 1 ¶ 44. 15 U.S.C. § 1681t provides that state law may not interfere with the FCRA "with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]" 15 U.S.C. § 11681t. To determine whether a state-law claim is preempted by the FCRA "courts must first consider whether the action is based on allegations that a furnisher provided inaccurate or incomplete information to a credit reporting agency or that a furnisher failed to correct inaccurate information. If so, the action is barred." *In re Tomlin*, 2016 WL 1317412, at *12 (Bankr. E.D. Ky. Mar. 31, 2016). "Although the Eighth Circuit Court of Appeals has not weighed in on the [scope of the] preemption issue . . . the Eighth Circuit would most likely follow the Seventh and Second Circuits in finding that the plaintiff's state-law claims are preempted." *Bridges v. J.C. Penney Corp., Inc.*, 2014 WL 12576320, at *5 (D. Neb. Apr. 21, 2014); *see also Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47 (2d Cir. 2011) (finding that the plaintiff's state-law claims were preempted by plain language of § 1681t(b)(1)(F)); *Ihebereme v. Capital One, N.A.*, 933 F. Supp. 2d 86, 98 (D.D.C. 2013) (holding that to the extent the plaintiff's breach of good faith and

fair dealing claim was related to the defendant providing allegedly false information to credit agencies, the claim was preempted by the FCRA).

Here, Hyde alleges that Franklin was negligent in its failure to perform its duties under the FCRA, which violates the covenant of good faith and fair dealing. Docket 1 ¶¶ 44-45. A fair reading of the complaint shows that part of Hyde's breach of good faith and fair dealing claim centers on the alleged negligence and failure of Franklin to properly report information to CRAs—a matter within the purview of the FCRA. Thus, to the extent Hyde's breach of good faith and fair dealing claim alleges damages from Franklin's reporting practices, Hyde's claim is preempted by the FCRA. *See* 15 U.S.C. § 1681t(b)(1)(F).

To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley*, 415 F.3d at 910 (quoting *Krenik*, 47 F.3d at 957). Hyde has failed to demonstrate the existence of specific facts that create a genuine issue for trial. Franklin is entitled to summary judgment on Hyde's breach of the implied covenant of good faith and fair dealing.

## B.    South Dakota Deceptive Trade Practices Claim

Finally, Hyde alleges in count IV of his complaint that Franklin engaged in deceptive acts or practices in violation of the South Dakota Deceptive Trade Practices and Consumer Protection Act. Docket 1 ¶¶ 46-48. Hyde broadly alleges that "Franklin has engaged in violation of South Dakota law with

24

respect to deceptive trade practices" by "mishandling and mismanagement of [his] loan accounts[.]" *Id.* ¶ 47. In his brief in opposition to summary judgment, Hyde alleges that he is entitled to recover damages from the misleading statement in Franklin's email communications indicating that Hyde was enrolled in Franklin's automatic payment platform. Docket 23 at 9-10. Hyde alleges that this was a "false and misleading subject line" and was a deceptive act practice. *Id.* at 10.

Under South Dakota law, it is a deceptive act or practice for any person to:

> Knowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby[.]

SDCL § 37-24-6(1). While SDCL § 37-24-6 is a criminal statute, SDCL § 37-24-31 governs civil actions, providing:

> Any person who claims to have been adversely affected by any act or a practice declared to be unlawful by § 37-24-6 shall be permitted to bring a civil action for the recovery of actual damages suffered as a result of such act or practice.

SDCL § 37-24-31. To establish a civil claim under SDCL § 37-24-31, Hyde must show that his damages "were proximately caused by" the alleged violations of the Act. *See Nygaard*, 731 N.W.2d at 197. Actions brought under SDCL § 37-24 must also "relate exclusively to practices declared to be unlawful by § 37-24-6." SDCL § 37-24-7.

Hyde's pleadings do not allege prohibited conduct under the Act. Hyde does not point to deceptive practices, fraud, false pretenses, or

misrepresentations. *See* Docket 1 ¶¶ 46-48. Hyde instead argues that the misleading e-mail subject line stating that Hyde had been automatically enrolled in Franklin's ACH payment platform was deceptive under the Act. Docket 23 at 9-10. Hyde states that "SDCL [§] 37-24-37 more precisely creates a private cause of action for any email communication that contains a false or misleading statement in the subject line." *Id.*

Hyde is incorrect. SDCL § 37-24-37 was repealed by state law in 2007. SDCL §§ 37-24-42—37-42-47 outline various prohibitions on commercial or unsolicited email advertisements, but do not have the language provided by Hyde in his opposition to summary judgment. Hyde fails to point to any current South Dakota law that provides that any incorrect or inaccurate e-mail subject line falls within the purview of the Deceptive Trade Practices and Consumer Protection Act. Instead, SDCL § 37-24-47 concerns commercial e-mail "advertisements" that have "subject line[s] that a person knows would be likely to mislead a recipient," not any e-mail that misleads the recipient. SDCL § 37-24-47. Thus, even accepting Hyde's allegations in his brief as true, the language of the statute requires a misrepresentation in connection with the sale or advertisement of merchandise. *See* SDCL § 37-24-6(1).

Here, the email from Franklin was not an advertisement and Franklin was not selling products by the email, even an intangible product such as a mortgage. Hyde has failed to produce evidence to show reliance on a misrepresentation "in connection with the sale or advertisement of any merchandise," as required under South Dakota law. SDCL § 27-24-6(1); *see*

26

*also Cheval Int'l v. Smartpak Equine, LLC*, 5:14-CV-05010-LLP, 2016 WL 1064496, at *12 (D.S.D. Mar. 15, 2016) (finding the plaintiff provided no evidence that the representations were made in connection with the sale or advertisement of merchandise as required under South Dakota law). Even if Hyde relied on representations by Franklin, the statements were not representations made in connection with the sale or advertisement of merchandise. Hyde has failed to provide evidence that Franklin's actions involved fraud, false pretense, or false promises. Thus, Franklin is entitled to summary judgment on Hyde's South Dakota Deceptive Trade Practices claim.

## CONCLUSION

Hyde fails to provide evidence that a CRA notified Franklin, as a furnisher of information, that Hyde disputed the accuracy of reported information. As such, Franklin's duties to investigate and respond under the FCRA were not triggered, and Hyde's FCRA claims fail. Hyde also fails to provide evidence that Franklin breached the implied covenant of good faith and fair dealing. Finally, Hyde fails to show that Franklin engaged in deceptive trade practices under South Dakota law. Thus, it is

ORDERED that Franklin's motion for summary judgment (Docket 21) is granted.

Dated April 8, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE